**MODERN PRODUCTS SUPPLY CO. v. DRACHENBERG.**

No. 10021.

Circuit Court of Appeals, Sixth Circuit.

Dec. 13, 1945.

W. P. Bair and Will Freeman, both of Chicago, Ill. (W. P. Bair and Will Freeman, both of Chicago, Ill., and Francis D. Hardesty, of Detroit, Mich., on the brief), for appellant.

Clarence B. Zewadski, of Detroit, Mich. (Clarence B. Zewadski and Howard H. Campbell, both of Detroit, Mich., on the brief), for appellee.

Before HICKS and ALLEN, Circuit Judges, and FORD, District Judge.

ALLEN, Circuit Judge.

This appeal arises out of a suit for infringement of Jenkins patent No. 1,953,714, of which the plaintiff [1] is the assignee. The defendant counter-claimed and asserted that the plaintiff was infringing Drachenberg patent No. 2,273,093. The complaint was dismissed by the trial court on the ground that the Jenkins patent was not infringed, and the claims of the counter-claim were sustained, the Drachenberg patent being found valid and infringed. Questions of trademark infringement and breach of contract asserted below are not raised in this court.

Each of the patents in suit is for a juice extractor, designed to extract juice from vegetables and fruits other than citrus fruits.

---

1. In this opinion the parties will be denominated as in the court below.

The importance of mechanisms for the extraction of juice from vegetables and fruits was apparent around the early part of the twentieth century, when movements to teach the use by the public of so-called health foods were instituted. The plaintiff's predecessor promoted information as to these juices on an extensive scale, and in order to facilitate their use, sold hand machines devised for juice extraction. Drachenberg's extractor, which was patented in 1937, had immediate and continued commercial success, plaintiff's predecessor selling it in large numbers. Later it had business difficulties with the defendant, and began to manufacture its own device, claiming that it constructed it under the Jenkins patent which it had previously purchased. Plaintiff's expert stated that although he had made inquiries, he had been unable to find any other machines of this kind on the market except those involved in this case.

In order to attain logical sequence we first consider the question raised by the District Court's sustaining the counterclaim, namely, the validity of the Drachenberg patent. The claims in issue are 6, 7, 8, 9, and 15. Claim 9 is typical, and is printed in the margin.[2]

The Drachenberg machine comprises a strainer with a perforated side mounted on the shaft of a motor which rotates at a speed of about 2,000 to 5,000 RPM. The upper surface of the bottom of the strainer has secured to it a grinding disc which rotates with the motor. A covered stationary housing encloses the rotatable strainer. On the cover of the housing is mounted a chute or hopper which enters the receptacle eccentrically of the grinding disc and terminates in close proximity to the disc. The area of the bottom of the chute is smaller than the area of the grinding disc. When vegetables or non-citrus fruits are placed in the chute the grinding disc macerates them and the pulp is thrown clear of the disc by centrifugal force and carried against the perforated wall. The juice passes through the perforations into the housing, from which it flows out through a spout.

The claims call for a combination in which the motor, the drum or bowl, the perforated wall and the grinding disc are all old in machines devised for a similar purpose. We apply the familiar rule that a combination to be valid must achieve a new and important result in a substantially new way; otherwise the combination is not patentable. The application of Drachenberg for this patent was at first refused, the examiner denying all claims involved herein. On appeal under Title 35, U.S.C., § 7, 35 U.S.C.A. § 7, the Board of Appeals voted unanimously to allow all claims in suit. As to the feature of the eccentric chute, it stated: "Jenkins does not show this feature. Moore, cited, shows this eccentric arrangement in a cotton seed huller but we think that applicant obtained such an improved result in his macerating device that it would not be obvious to modify the Jenkins patent to meet these claims."

As to the feature of the perforated wall, the Board declared: ."Many of the claims, among which is claim 46, specify that the receptacle is perforated and a stationary housing encloses the receptacle which receives the juices passing through the perforated receptacle. Applicant urges that in the Jenkins patent the juice which passes through the screen and upward along the wall, will be agitated so that it foams. He states that this is very objectionable. It is true that the Crowe patent cited shows a rotatable receptacle which has a perforated wall. However, this patent relates to a juice extractor of a different type. We think that the above limitation in the claims renders the apparatus claims patentable over the prior art."

---

[2] "9. A device of the class described, comprising: a receptacle having a base and a perforated wall and rotatable on a vertical, axially directed axis; a stationary chute projecting at an open end into said receptacle and terminating at said end in close proximity to and spaced from said base; macerating means within said receptacle and projecting upwardly of said base and determining, upon rotation, an area larger than the area of said open end of said chute and rotatable across said open end of said chute for engaging and macerating materials projecting therefrom and carrying the same clear of said chute and projecting the same outwardly toward said wall, said open end of said chute being located eccentric of the area determined by said macerating means; means for rotating said receptacle and said macerating means; and a housing enclosing and spaced from said receptacle for reception of juices passing through the wall thereof, said receptacle being rotatable relatively to said housing."

Appellant now contends that Brophy, 1,454,918, and Steere, 1,349,739, both of which were not considered in the Patent Office, require a holding of invalidity. Brophy's patent is for an orange juicer. It discloses the familiar reamer upon which one-half of an orange or lemon is pressed, with the result that the pulp and juice are separated from the skin, which is left intact. By centrifugal action the pulp and juice are thrown against a rotating filter, separating the juice from the pulp. Steere is a fruit and vegetable pulping machine. It does not separate the pulp from the juice centrifugally, but it has an eccentric material holder or hopper.

Patents, however, were before the Board of Appeals in which these identical features were presented. The examiner had considered the orange juicers of both Streckfuss, 2,026,918, and Crowe 1,993,337. The appellants admit that Crowe is similar to Brophy, and in all essentials these patents disclose the elements in Brophy which are now said to require reversal. The eccentric chute was before the examiner in Moore, 1,369,978, and Gore (British) 8976/07. All of the features which are claimed to invalidate Drachenberg were considered by the Board of Appeals and held not to be controlling.

The presumption of priority and validity which arises from the granting of a patent has greatly increased weight when the claim of the inventor is subjected to close and careful scrutiny in the Patent Office under the stimulus of a heated contest. Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; Consolidated Bunging Apparatus Co. v. Peter Schoenhofen Brewing Co., C.C., 28 F. 428. While no private parties intervened in this case, a very vigorous contest was made over the issuance of the patent. Repeated amendments were offered to the various claims, some of which the examiner denied and some of which he allowed. The Board of Appeals, after an exhaustive examination of the state of the art, sustained the examiner as to three claims, but reversed him as to his denial of all claims in suit herein. Most of the pertinent references in the record were before the Patent Office and were rejected as anticipations. This fact greatly strengthens the presumption of novelty and invention which arises from the grant of the patent. General Electric Co. v. Jewel Incandescent Lamp Co., 66 S.Ct. 81.

Moreover, the record, apart from this presumption, sustains the holding of validity. While many prior patents claimed to constitute anticipations are presented, all but two of them were before the Board of Appeals, and the problem is relatively simple. The patents fall roughly into four groups: Devices (1) for pulping vegetables and fruits; (2) for slicing bread, vegetables or fruits; (3) for the extraction of juice from the citrus fruits, and (4) those which attempt to extract juice from vegetables and non-citrus fruits, of which Drachenberg is the chief example. The pulping machine, such as Steere, supra, has a totally different object from Drachenberg. The purpose is to save and improve the pulp, and the separation of juice as disclosed by the specifications and claims is merely incidental. In fact Steere produces a mixture of pulp and juice. There is no centrifuging action in Steere by which the juice is separated from the pulp, and the highly improved macerating result obtained by Drachenberg is absent. The vegetable cutters or slicers, such as Barlow, 519,224; Aeschbach, 1,898,160; Heinlein, 503,599, and Kimmel, 243,139, make no attempt to extract juice. They disclose no rotating strainer. The motor-driven devices for extracting orange juice, such as Miller, 1,757,326; Crowe, 1,993,337; Brophy, 1,454,918, and Graham, 1,886,092, are helpful only up to a certain point. Their final problem is different from that of the devices which attempt to extract juice from vegetables and non-citrus fruits, for the juice in an orange is already separate from the tough outer skin. The method of these devices is that of extracting juice from half an orange or lemon by pressing it against a reamer. There is no feeding chute and no macerating means. It would be impossible in any of these machines to extract the juice from apples, pears, beets, carrots, or from leafy material such as spinach, all of which ends are successfully attained by Drachenberg.

The two references nearest to Drachenberg are Jenkins, supra, and Naylor, 528,735. Naylor is a patent for continuous extraction as distinguished from the machines for extracting a glass of juice at a time. While Naylor has a centrifugal device with a power-driven bowl and macerating means, the cutting disc is concentric of the chute, and therefore does not attain the result of Drachenberg. Nay

lor is a pulping machine which does not strain the pulp from the juice. It has no strainers and no grinding disc, and the macerated material, a semifluid pulp, runs down by gravity instead of being flung outwardly, as in Drachenberg. Jenkins, the nearest reference, has a perforated filter to separate the juice from the pulp, but its housing is not adapted for receiving liquids and the juice is rotated with the rotating receptacle. This makes the juice very foamy and gives it a flat taste Plaintiff admits that Jenkins has this characteristic, stating in argument before the Board of Appeals that because the juice is whirled he gets a foamy product. Drachenberg avoids this result by surrounding his perforated wall with a nonrotatable housing which receives the juice after it passes through the perforations Jenkins admits in his file-wrapper pleadings that in his device the fruit is whirled and bounced. The result is that the fruit is bruised and softened and the body of the pulp becomes oxidized. Drachenberg, on the other hand, arranges his chute eccentrically of the grinding member and gives it an area less than the area of the grinder. The result is that the grinder in rotating sweeps across the end of the chute and cuts off the material projecting beyond it. While the Jenkins disc bruises the fruit by knocking it up into the hopper, Drachenberg sweeps the material away as soon as it protrudes from the hopper, disposes of it against the perforated wall and comes back to repeat the operation cleansed by its own rotation. These circumstances result in the attainment of a superior achievement by Drachenberg. Oxidation and the foaming of the liquid are eliminated, and the product secured is fresher than that attained by any other machine. This is done through a combination which functions in a new way and achieves a new and improved result.

The need for such a device as Drachenberg had long existed. Plaintiff's witness, Edward Neumann, who sold the hand-machines for several years around 1934, said that he had examined some fifteen or sixteen mechanisms for the making of juice. He stated that none of them were successful; that they never got a commercial foothold, and are not being sold today. Drachenberg and plaintiff's imitation of Drachenberg are the only machines shown to be sold for the precise purpose.

The utility of Drachenberg is clearly shown. The District Court, in extensive findings, stated in effect that Drachenberg had fewer parts, more accessible and easier to clean than those of Jenkins, and plaintiff's expert admitted that Drachenberg was simpler. Drachenberg eliminates oxidation of the fruit juice and delivers a large proportion of the juice separated from the pulp, in a relatively fresh state. The court found that Drachenberg has very little vibration. These, and other findings of the court which adopt and amplify the finding of the Board of Appeals as to the improved result attained by Drachenberg, are sustained by the record. These facts, within the recent holding in Goodyear Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721, require that the judgment of the District Court be affirmed on the counterclaim.

The trial court was likewise correct in its holding on the complaint for the reason that the Jenkins patent is not infringed by defendant's device. Two claims of Jenkins are in issue, 1 and 21. Claim 21 is printed in the margin.[3]

It is not shown that the Jenkins device has ever gone into commercial use. When the plaintiff decided to manufacture its own device it did not manufacture Jenkins. Since the patent is a paper patent, it should be strictly construed. Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. R. Co., 6 Cir., 172 F. 371, 377; Stewart-Warner Corporation v. Jiffy Lubricator Co., 8 Cir., 81 F. 2d 786, 793; Wire Tie Machinery Co. v. Pacific Box Corporation, 9 Cir., 102 F.2d 543, 556.

Both Jenkins and Drachenberg disclose machines electrically driven, with a drum or bowl mounted on the motor inside of

---

3 "21. In a centrifuge device, a shaft, a bowl-like member on the end of the shaft, a grinder element in the bowl-like member mounted for rotation therewith, and a relatively fixed material holder extending into the bowl and terminating in spaced relation to the grinder element, the material holder and the grinding element being so positioned that the material in the holder which is disintegrated by the grinder element is discharged centrifugally toward the sides of the bowl."

which is positioned a grinding plate or disc. Each of them presents a perforated plate or wall which serves to separate the pulp from the juice and has a hopper or chute to feed material into the drum. The basic structure of the two extractors exhibits certain similarities. Jenkins, however, uses an inverted conical chute or hopper concentric with the grinding or cutting disc, and this feature is not present in defendant's device.

In his argument before the Patent Office on the amendment of October 10, 1932, Jenkins stated: "The significance of having the fruit holder in the shape of a cone, or having its walls form an acute angle with respect to the disc, is that the centrifugal action tends to throw the fruit into this acute angle where it is squeezed between the grinding disc and the cone and the disintegration very rapidly and completely effected. If the fruit holder is in the form of a cylinder of uniform diameter, the fruit is free to roll around, with the result that the disintegration is much slower. Moreover, with the straight cylindrical walls the pressing action caused by the squeezing of the ruptured fruit against the angular walls of the hopper with the subsequent extraction of juice in this manner is not obtained. * * *"

This appraisal by the inventor of the significance of the conical chute has weight in determining whether this feature not presented in Drachenberg is an important element of plaintiff's device.

The Drachenberg chute, which is cylindrical and eccentrically disposed with reference to the cutting disc, plaintiff's expert stated is not the mechanical equivalent of Jenkins' conical wall. He declared that the cone-shaped hopper acts as a wedge when the fruit moves into the narrow part of the cone and holds the fruit in grinding position. This feature, he said, dispensed with the necessity of pushing the material down to have it feed properly, and he estimated that certain vegetables, such as carrots, might take twelve or fifteen seconds to be ground up with the straight hopper, whereas the conical hopper would take six seconds. Jenkins also, since he permits juice to foam, is compelled to employ a foam-collector, which is not present in Drachenberg.

Jenkins emphasizes an independent feature of self-adjustment which does not appear in Drachenberg. It was stated in the amendment to his application, supra, in the Patent Office, that "In machines of this kind it frequently happens that a relatively large piece of pulp may be thrown out at one place, and other pulp will build up around it, with the result that the bowl is thrown out of balance due to the accumulation of material at one point. This out-of-balance condition, of course, tends to spring the drive shaft at the bearing directly under the bowl. * * * This means that the pulp can discharge more freely on the overloaded side than on the opposite side, creating a condition which would be aggravating except for one fact. This fact is that when the shaft is sprung, the disc instead of rotating in a true plane, is wobbling up and down with respect to the walls of the fruit holder. Since the fruit is confined to a certain extent in the fruit holder by the angular slope of the sides, the high portion of the disc serves to gouge into the fruit in this wobbling motion of the disc more than the lower part, with the result that more pulp is freed by that portion of the disc which is opposite the point of overloading, so that a greater amount of pulp is ground off and discharged on the light side than on the heavy side. This quickly creates a counter-balancing condition that restores the grinding disc to its normal plane of rotation, with the result that in the applicant's machine an unbalanced condition quickly adjusts itself and the bowl continues to run smoothly."

While plaintiff contended that there would be a wobbling action in the Drachenberg machine, the District Court found that Drachenberg operates with very little vibration, but that there would be unequal loading of the Jenkins disc due to the fact that the material would not hold in a fixed position during the grinding operation, which would cause considerable vibration.

These substantial differences in structure, operation and result strongly support the finding of the District Court that defendant's device does not infringe Jenkins. Since the findings of the District Court upon the question of infringement constituted findings of fact, unless they are clearly erroneous they should not be disturbed. Aluminum Co. of America v. Thompson Products, 6 Cir., 122 F.2d 796, 799.

The judgment is affirmed.