David R. **BLAKE**, an individual, and Ever-Level Glides, Inc., a corporation, Plaintiffs and Counter-defendants,

v.

The **BASSICK COMPANY**, a corporation, and Stewart-Warner Corporation, a corporation, Defendants and Counter-plaintiffs.

**STEWART–WARNER CORPORATION,** a corporation, Plaintiff,

v.

**AMERICAN SEATING COMPANY,** a corporation, Defendant.

Nos. 62 C 694, 62 C 2112.

United States District Court
N. D. Illinios, E. D.

Jan. 19, 1967.

On Motion to Amend Decision on Merits
Feb. 13, 1967.

---

Augustus G. Douvas, George B. Christensen, Chicago, Ill., for Bassick Co. and Stewart-Warner Corp.

John D. Dewey and John L. Alex, Chicago, Ill., for American Seating Co., David R. Blake and Ever-Level Glides, Inc.

## DECISION ON MERITS

ROBSON, District Judge.

Although the instrumentality involved in the Blake patent, No. 2,704,663, suit is relatively simple, which fact might tend to obscure the degree of inventiveness involved, the court, after a careful review of the record, concludes that the Blake patent is both valid and infringed, and defendant Stewart-Warner's Wasdell patent, No. 2,503,143, is invalid and is not infringed.

Cause No. 62 C 2112 concerns the Wasdell patent, No. 2,503,143, owned by Stewart-Warner Corporation. The patent is-sued April 4, 1950, and, since the filing of this suit on March 26, 1962, was acquired by Stewart-Warner on September 21, 1962, and was also made the basis of its counterclaim filed November 21, 1962, in 62 C 694, charging infringement by Blake, Ever-Level Glides, Inc. and American Seating Company, and seeking an injunction and damages.

Blake and Ever-Level Glides, Inc. are plaintiffs in 62 C 694 involving the validity of the Blake patent and charging defendants Bassick Company and Stewart-Warner Corporation with infringement. Cause 62 C 2112, consolidated with 62 C 694, also was predicated on the Wasdell patent, and charged infringement by the American Seating Company, which was on June 24, 1954, granted restricted exclusive license of the Blake intention in the public seating field (such as schools and theatres). Ever-Level Glides, Inc. on April 6, 1960, was granted an exclusive license of the Blake device on furniture and equipment in the restaurant and cafeteria field.

The Bassick Company, since the institution of the proceedings, merged with the Stewart-Warner Corporation, the latter being the surviving corporation.

The application for the Blake patent was filed July 24, 1948, and issued March 22, 1955, containing two claims. The original application stated the only prior foreign application was in Great Britain, filed April 26, 1948, and the complete specification published November 28, 1951. On January 2, 1963, Blake petitioned the Patent Office for a retroactive license under the statute, 35 U.S.C. § 184. It was denied April 4, 1963, and renewed May 15, 1963, and approved May 16, 1963.

A prior patent application by Blake had been filed October 24, 1946, and was abandoned, but during its pendency, the application, which resulted in the Blake patent, was filed.

Blake's invention lay in the combination of the unique qualities of a previously patented substance, "bouncing putty" or silicone putty, in a leveling device which is affixed to the legs of a table,

and within a matter of minutes makes an adjustment to an uneven floor, resulting in stability of the table. It is used on restaurant tables, school tables, and the like. Blake's testimony, which is corroborated by documentary records, reveals that there was a real need for this device. Prior thereto there had been only a manually adjustable device, which adjustment would need revision if the table were moved and the physical condition of the floor changed. After Blake began working on his levelers in 1940, he tried many fillers for his device, which were ineffective, before he conceived the idea of using bouncing putty, which he learned about in 1946. No use had been found by General Electric or Dow Corning Corporation for bouncing putty as of August 12, 1947.

A simple description of the function of the Blake patent and its component parts is found at the beginning of the patent specifications:

"This invention relates to leveling devices for furniture and the like, and its chief object is to provide simple automatic devices for preventing tables, cabinets, refrigerators and other articles and machines from rocking when they are resting on an uneven floor.

"One of the principal features of this invention is the simplicity of the devices. The essential elements of each device consist merely of a dashpot with a piston and a spring to extend it, some means like a screw or a nail for fixing the piston to the end of a table leg or other support, and a filling of a peculiar substance called 'bouncing putty' to keep the dashpot from compressing quickly under a load.

"Bouncing putty has a unique combination of the properties of a liquid and a solid. One [sic] the one hand, it will deform slowly under the slightest force, like a very viscous liquid, and there is no limit to how far it will deform, as long as the force applied to it is not great enough and applied suddenly enough to break it. A lump of it placed in a container will spread out under merely its own weight and in a few hours cover the bottom of the container like a liquid. On the other hand, it will not flow quickly; it resists sudden forces as if it were a solid. Its rigidity under sudden forces is like that of rubber rather than like that of steel, and a round lump of it will bounce like a rubber ball.

\* \* \* \* \* \*

"Because bouncing putty has these properties [self adhesion and high surface tension], the dashpot can be made very simply with large clearances and with no check valves, piston rings, packing glands, flexible diaphragms, bellows, or other seals to keep the filling from flowing past the piston too fast or from leaking out."

The Bassick devices use the substance SE–100U as a filling material, and the Blake and Ever-Level Glides, Inc., and the American Seating Company devices use the material SS–91, or a product derived therefrom, as filling material. All the filling materials are purchased from the General Electric Company.

It is asserted that the Blake leveling device has met with extraordinary public acceptance and in large measure had supplanted other types of glides.

Bassick raises the standard challenges to validity of the Blake patent—prior publication, prior patents, filing of a foreign application for the same invention earlier than six months after the United States application; inadequate disclosure by the patent; lack of true invention; estoppel to broad interpretation of claims because of narrowing of coverage in the Patent Office; invalidity of the retroactive license granted Blake on May 16, 1963, in respect to the foreign filing of the Blake invention in England; estoppel to enforce the Blake patent because of defendant's intervening rights by manufacture of the alleged infringing device prior to plaintiff's securing the retroactive license.

Plaintiffs negate infringement of the defendants' Wasdell patent in that it is adapted for conventional use in connection with the usual suspension springs

of a vehicle or other device for the purpose of damping out undesirable vibrations set up by the flexing of such springs. Plaintiffs also advance the usual bases for challenging the validity of the Wasdell patent.

Plaintiffs insist Blake has produced a new and useful result (Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc., 298 F.2d 36 (7th Cir. 1962)) entitled to the statutory presumption of validity (35 U.S.C. § 282; Anderson Company v. Sears Roebuck and Co., 265 F.2d 755 (7th Cir. 1959)), which presumption is enhanced when the application received detailed consideration in the Patent Office (Modern Products Supply Co. v. Drachenberg, 152 F.2d 203 (6th Cir. 1945)). It filled a long-felt need (Charles Peckat Mfg. Co. v. Jacobs, 178 F.2d 794 (7th Cir. 1949); Blaw-Knox Co. v. I. D. Lain Co., 230 F.2d 373 (7th Cir. 1956)). Its commercial success attests to its inventiveness (Goodyear Tire & Rubber Co., Inc. v. Ray–O–Vac Company, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944).

Plaintiffs maintain there has been no other successful automatic leveler either before or after Blake. He has been selling the device commercially since the middle of 1947. Over seven million levelers have been sold between 1950 and 1963 by Ever-Level Glides, Inc. after its license from Blake, who had sold a million of them before that. American Seating Company has sold over five million glides under its license. Even Bassick and Stewart-Warner Corporation sought licenses under the Blake patent. American Seating Company sales of furniture *with* the levelers *doubled* in comparison to those without them.

Plaintiffs insist the shock absorber art is nonanalogous to the leveler art (Copeman Laboratories Co. v. General Plastics Corp., 149 F.2d 962 (7th Cir. 1945)).

Plaintiffs base their charge of willful and wanton infringement on the fact that Bassick, the leader in its field of manufacture, had no interest in automatic glides until its customers asked for one similar to Ever-Level's. Bassick got a sample of plaintiffs' glide and in 1957 asked for a license under Blake's patent, and when advised that existing licenses covered restaurant and public seating it said it wasn't interested. Bassick assigned its engineers to seek a noninfringing device comparable to plaintiffs'. It continued such study until 1960 when its accused device was marketed. Defendants' years of work to circumvent plaintiffs' invention resulted in a device of only insignificant differences.

Plaintiffs refute infringement of claim 1 of the Wasdell patent because its filler, SS–91, is not an unvulcanized elastomer. Mere use of the dashpot does not make the plaintiffs' leveler a shock absorber, and SS–91 cannot be used in Wasdell's shock absorber device, which is directed solely to vehicular use. It was not one which could be bottomed, whereas plaintiffs' device contemplates the leveler remaining bottomed out during its operational use.

Plaintiffs cite there can be no infringement where the device operates in a different manner and with a different result (Electric Railroad Signal Co. v. Hall Railway Signal Co., 114 U.S. 87, 5 S.Ct. 1069, 29 L.Ed. 96 (1885)). A shock absorber must be capable of *instant* response.

A patent on a plurality of elements cannot be infringed where there is an omission of any of the elements (Edwards v. Hychex Products, 171 F.2d 259 (7th Cir. 1948)). Plaintiffs' SS–91 is not technically an unvulcanized elastomer; it has never been vulcanized.

Further, the Wasdell patent requires the shock absorber to be completely filled whereas Blake's leveler is specifically not completely filled, except when bottomed out.

Plaintiffs assert invalidity of the Wasdell patent on the ground of its vagueness at the very point of asserted invention, i. e., "unvulcanized elastomer" in claim 1, as demonstrated by the inoperativeness of SE–100U in a court demonstration of a shock absorber. Blake's SS–91 is not technically an "unvulcanized elastomer." It cannot successfully be used in shock absorbers. Plaintiffs even seek an award

of attorneys' fees on the basis the charge of infringement of the Wasdell patent is frivolous and vexatious (35 U.S.C. § 285). In fact, defendants in their counsel's opening statement said it was their position that neither patent was infringed.

Plaintiffs stress the nonanalogous character of the shock absorber art and the furniture leveler art. The former uses oil. Levelers do not function as shock absorbers and have never been advertised to do so.

Defendants state their basic position to be that "neither patent is infringed" but "if the Blake patent is accorded a measure of equivalence sufficient to encompass the accused Bassick structure, then the Stewart-Warner [Wasdell] patent, by that same measure of equivalence in reverse, encompasses the structures fabricated by the Blake group." Defendants continue, "Although Blake is the innovator of what appears to be the first commercially successful anti-wobble device, his glide operates in accordance with broad principles known in the prior art."

Defendants maintain that when they found they could get no license under plaintiffs' patent they set out to devise one of their own, and did so, and used three elements which Blake had told the Patent Office would not operate in a glide of his design, using unvulcanized silicone rubber, a strong supporting spring, and an O-ring seal.

Defendants insist that the glide described in the Blake patent was similar to that described in the German Patent No. 640,708 to Robkopf in 1936.

Defendants point out that Blake's invention resides in the use of the material, bouncing putty, and is limited thereto because both of the two patent claims expressly so limit the invention. Furthermore, bouncing putty, has a precise meaning with a particular chemical composition and flow characteristics. Defendants' SE–100U is not a bouncing putty and does not meet the chemical and physical requirements because it does not have the essential ingredient boron and does not have the free flow phenomena evidencing liquid flow characteristics, nor the sudden force shattering phenomena. The Blake patent claims limit a structure with a spring located inside the dash pot and not with the spring located on the outside of the dashpot chamber between the cover plate and a stop on the piston rod.

Defendants claim plaintiffs are not entitled to invoke the doctrine of equivalence inasmuch as they are limited by estoppel to a strict construction of the patent because of the history of the patent in the Patent Office (Lewis v. Avco Manufacturing Corp., 228 F.2d 919 (7th Cir. 1959); Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942)). Once having narrowed the claims, the patentee is limited thereto (Ekco Products Co., Inc. v. Chicago Metallic Manufacturing Co., 347 F.2d 453 (7th Cir. 1965)). Of the 27 claims which Blake presented to the Patent Office but two were allowed, and both were limited to bouncing putty. In some of the other claims, materials such as Bassick's unvulcanized silicone rubber, SE–100U, were included, i. e., an "organosiloxane in the plastic state," which is what SE–100U is. The allowed claims cannot be enlarged to include that which was in the rejected claims (Schriber-Schroth Co. v. Cleveland Trust Co., et al., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940)). Having disclaimed unvulcanized silicone rubbers he cannot now reclaim the organo-siloxanes. No broader interpretation should be given to the term "bouncing putty."

Defendants also claim a file wrapper estoppel with respect to the location of the spring in the Blake patent, that it must be confined within the chamber or dashpot, either below the piston and the bottom of the chamber or the piston and the top of the chamber. Thus Bassick is precluded from a charge of infringement because its spring is outside the chamber. Several of the cancelled claims had the spring outside the chamber, so there is estoppel to so interpret the claims (Keating v. Stearnes Imperial Co., 347 F.2d 444 (7th Cir. 1965)). On the other

hand, plaintiffs claim the location of the spring within the dashpot is not critical, and the statement of its position would have been eliminated if it had so understood it. Defendants insist their product cannot be within the Blake patent because it uses a strong spring, an unvulcanized silicone rubber and an O-ring seal to prevent leakage and these were precisely the things that Blake insisted could not work. They cite an affidavit filed in the Patent Office which states the spring must be very weak in proportion to the weight of the article with which the device is being used.

While the plaintiffs' and defendants' glides perform the same function, defendants insist they do not do it by means and modes of operation which are equivalent.

Defendants stress that unvulcanized silicone rubber is not the equivalent of bouncing putty. Defendants state the testimony proves that its SE–100U had only one of the three flow states of bouncing putty, i. e., viscoelastic plastic solid, regardless of the rate of application of the applied force, and it does not act as a liquid when pressures are slowly applied, nor as a rigid solid under a suddenly applied force. It is proved by the fact that the bouncing putty filler needs no seal because it solidifies, but the defendants' material needs a seal and can be pumped out of the glide by the piston motion.

Defendants also point out that their *strong* springs are not the equivalent of Blake's *weak* springs, and that while the patent makes no reference to the strength of the springs, Blake represented to the Patent Office many times the need for weak springs so as to achieve full compression, which defendants' strong spring does not achieve. The strong spring strength so changes the operation of the glide that it precludes a determination of equivalence. None of the Bassick glides bottoms out under the weight of a table. There is a significant relationship between the spring strength and the filler material used in the glides. The springs bear the load in the Bassick glide.

In the Blake glide the sole function of the spring is to maintain the fourth glide elongated while the other three are bottomed out, so the spring need only be strong enough to force the bouncing putty around the piston from the one side to the other. The spring performs little, if any, load bearing function. The spring performs the single primary function in the Blake implement of extending the device and the bouncing putty performs the shock resisting function. On the other hand, the Bassick spring supports the load, elongates the glide if no load is placed on it, and has the strength to push the piston through the filling medium which has no liquid state under slowly applied forces, so the spring has to have substantial strength. The spring also absorbs much of any sudden shock. The only function of the filling material in the Bassick glide is to dampen the movement of the piston.

Bassick eschews the value of the court demonstrations of the respective glides of plaintiffs and defendants, maintaining. that the weights on defendants' table were not heavy enough to compress fully the Bassick glides because of the strength of the springs. While witness Richard M. Savage on deposition testified that the glides were all equivalent, his testimony refutes the conclusion because he stressed the difference in the filling materials, and the difference in the piston action. He made only simple tests of the glides themselves, not on a table. Defendants insist that while the glides perform substantially the same function, they lack the identity of means and mode of operation required in this circuit for a showing of equivalency (Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 194 F.2d 945 (7th Cir. 1952)).

Blake's claims are directed to a combination of old elements, defendants say, which must be carefully scrutinized because of the improbability of finding invention in an assembly of old elements (Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, (1950); Powder Power Tool Corp. v. Powder Ac-

tuated Tool Co., 230 F.2d 409 (7th Cir. 1956)).

Defendants believe that if the Patent Office had had before it the additional prior art of the Herz patent No. 1,114,691, Hussman No. 2,359,917, Gerb No. 2,148,-937 and Wasdell No. 2,503,143, they would not have granted the patent over those devices covered by the Robkopf German patent No. 640,708, the Bazley patent No. 2,460,116, and Henley patent No. 1,461,-091. Each of the uncited patents shows a dashpot having a piston with large clearances and a viscous or plastic filling medium in the chamber, the precise features on which the Board of Appeals of the Patent Office based its finding of patentability.

Defendants further assert plaintiffs are in a dilemma as to "bouncing putty," they must give it a narrow construction in order to uphold their patent over the prior art, and they must give it a broad construction in order to encompass defendants' glides with the markedly different substance SE–100U as filler. Plaintiffs may not claim inventiveness by utilizing a new material upon its becoming commercially available (Ruben Condenser Co. et al. v. Aerovox Corp., 77 F.2d 266 (2nd Cir. 1935); Johnson & Johnson v. Kendall Co., 327 F.2d 391 (7th Cir. 1964)).

Another defense which defendants raise is that the Blake patent is invalid because of a prior public use. They cite the filing of the patent application on July 24, 1948, but state that he had theretofore mailed a set of glides on January 10, 1947, to a friend, to serve as a basis for his trademark registration No. 502,-308. The friend used the glides on his chair and demonstrated the use to others, which is a public use under the decision of Egbert v. Lippmann, 104 U.S. 333, 26 L.Ed. 755 (1881), and Randolph v. Allis-Chalmers Manufacturing Co., 264 F.2d 533 (7th Cir. 1959)). Thereupon the patentee has the burden of proving the use was not a public use. Use for experimental purposes must be solely connected with that purpose (Hobbs v. Wisconsin Power & Light Co., 250 F.2d 100

(7th Cir. 1957)). (Plaintiffs claim this was an experimental use.) Since Blake is not entitled to his earlier application date, and since the use was for purely social purposes and to establish his trademark rights, there was an invalidating public use more than a year prior to his application.

Defendants maintain that Congressional legislative history refutes the conclusion that an issued patent could be validated by a retroactively procured license, such as Blake received. Furthermore, Blake's license is invalid because he procured it by misrepresentation. They point out that "bouncing putty" never appeared in the original United States (abandoned) application, but first appeared in the British provisional specification. Blake stated to the Patent Office that he had prepared and filed his British provisional specification without the aid of an attorney, but his deposition reveals that his patent attorney prepared it, therefore his license is void, and consequently the patent is invalid (35 U.S.C. § 185).

Defendants believe they are protected by the equitable estoppel doctrine or intervening rights principle and the Blake patent is unenforceable as against them because they entered the field before the granting of a retroactive license and would have no way of knowing that the patentee would be able to prove inadvertence in prior foreign filing (Sontag Chain Stores Co., Ltd. v. National Nut Company of California, 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204 (1940)).

Plaintiffs stress the comparison is not to be made of defendants' material SE–100U with plaintiffs' SS–91 but whether defendants' SE–100U can be considered a "bouncing putty" within the purview of the patent. The claims when read in the light of the specifications as permitted by law, disclose a putty-like substance which resists a suddenly applied force and deforms slowly in response to a steadily applied force. Since SE–100U was not in existence at the time of the patent, it was not then known, but nevertheless had the physical characteristics delimited

by the patent which was meant to cover future compounds.

Plaintiffs insist they cannot be held to infringe claim 1 of the Wasdell patent because their material SS–91 is not an unvulcanized elastomer. Neither could defendants' SE–100U be used in the Wasdell shock absorber. On the other hand, aside from "highly technical chemical distinctions" for all practical purposes, defendants' SE–100U is the equivalent of SS–91 insofar as they function in the glide. SE–100U resists a suddenly applied force and flows under a steadily applied force.

Despite the many seemingly plausible legal arguments advanced by the defendants to refute validity and infringement by them of the Blake patent, and to establish validity and infringement by plaintiffs of the Wasdell patent, the court is convinced that the Blake patent is valid and infringed and the Wasdell patent is invalid and not infringed.

The court cannot ascribe to the prior art the clarity of revelation and anticipation which defendants accord it. Blake worked for many years to achieve his invention, and defendants worked several more years, after failing to procure a license under Blake, to construct a workable glide. If the prior art were as revealing as defendants claim, the experimentation should have been brief, or not at all necessary. The uniqueness of the application of bouncing putty to glides was attested by the vice president of General Electric Company writing on September 27, 1949, terming the combination an "ingenious idea."

The court is of the opinion that the shock absorber art is not analogous to that of glides. They were not aimed at serving the same function—that of the shock absorber, as its name states, was to take the brunt of sudden force. The glide is to make a level plane out of an uneven surface by automatic adjustment of the glides to compensate for the uneven surface. The only similarity would seem to be the use of containers in the form of a dashpot. The filling materials in the respective arts are entirely different, and serve different functions.

The court deems neither the relative strength of the springs nor their precise positions sufficient to absolve defendants from infringement, neither being of true significance in the patent combination but merely recommended features in the device. Nor does the plaintiffs' leveler infringe the Wasdell patent, inasmuch as its filling material, SS–91, is not an unvulcanized elastomer and is not capable of being vulcanized into elastomeric form.

The court is of the opinion that the plaintiffs' interpretation is correct of the interrelation of the patent statute sections, 102(a) and (g), (e) and 119, as expounded in Application of Hilmer, 359 F.2d 859 (C.C.P.A.1966), i. e., that the earlier foreign filing date does not entitle it to the standing of a prior art reference as of that date, but only as of the United States filing date.

The court has concluded to adopt the findings and conclusions submitted by Blake and Ever-Level Glides, Inc. as the court's findings. They are completely in accord with the court's review of the evidence. For the court to reformulate the findings would be sheer duplication of effort and a needless expenditure of the court's time (Heterochemical Corporation v. United States Rubber Company, 368 F.2d 169 (7th Cir. 1966)).

## ON MOTION TO AMEND DECISION ON MERITS

Enter Order granting Motion of The Bassick Company and Stewart-Warner Corporation to Amend the Decision on the Merits, there having been no intention to find wilful and wanton infringement nor to award treble damages and attorneys' fees, and the adoption on the plaintiffs' findings in respect thereto being inadvertent.