MINNEAPOLIS–HONEYWELL REGU-
LATOR COMPANY, Plaintiff-
Appellee,

v.

MIDWESTERN INSTRUMENTS, INC.,
Defendant-Appellant.

No. 13251.

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1961.

Rehearing Denied Feb. 13, 1962.

Malcolm S. Bradway, Chicago, Ill., Gordon D. Schmidt, Kansas City, Mo., Owen J. Ooms, Ooms, Welsh & Bradway, Chicago, Ill., Hovey, Schmidt, Johnson & Hovey, Kansas City, Mo., of counsel, for appellant.

Will Freeman, Chicago, Ill., D. D. Allegretti, Chicago, Ill., for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is a patent infringement suit involving C. A. Heiland Patent No. 2,580,-427 issued January 1, 1952, on an application filed August 11, 1944. The patent relates to a recording apparatus or oscillograph, and is used to photographically produce a graphic representation of such conditions as temperature or pressure

changes, mechanical vibrations, heart-beats, sounds and many other variables.

Claims 3, 13, 14, 15, 16 and 17 are in issue. Plaintiff's instrument is known as a Visicorder. Defendant's accused device is known as a Direct/Riter. Defendant's Models 602 and 616 are charged with infringing Claims 16 [1] and 17 of the patent, and its Model 616 when fitted with a filter, is charged also with infringing Claims 3, 13, 14 and 15.

The District Court held the claims in issue to be valid. It also determined that defendant's Models 602 and 616 infringed Claims 16 and 17 of the patent, and defendant's Model 616 which incorporates an amber filter, also infringed Claims 3, 13, 14 and 15 of the patent.

The type of recording instruments here involved is of great importance. In both industry and scientific research, it often is essential to record changes in a phenomenon being observed. The research engineer might wish to accurately observe and record the changes in temperature within a rocket motor. The doctor or medical researcher might wish to observe and record changes in the rythm of a beating heart.

The prior art showed oscillographs having direct readout properties when using a mechanical pen or stylus. There were also "wet-process" oscillographs which permitted simultaneous charting of multiple high-speed phenomena. The prior art also revealed paper primarily responsive to ultraviolet rays.

In his patent, Heiland set forth the disadvantages of the two types of conventional recorders or oscillographs which had preceded him. The mechanical pen type could not record rapidly occurring phenomena because of the inertia of the pen. These recorders were limited to the study of low frequency phenomena or slowly changing phenomena. This type could record only a limited number of phenomena simultaneously because one moving pen could easily obstruct the other.

The big disadvantage of the wet process oscillograph, also known as the photographic camera type, was the necessary delay in examining the record until after the photographic development was completed. The Heiland patent sets forth that its principal object is to overcome the defects of both types of recording instruments theretofore used.

Finding of Fact 9 points out "The Heiland patent sets forth that the purpose of the invention is to provide an improved recording system which may be employed to indicate immediately and permanently fluctuations in values of any physical, chemical or electrical phenomena of either high or low frequency which may be indicated by the oscillations of an electric current."

In its opinion, the trial court stated the essence of the Heiland invention is an oscillograph which produces an immediately visible trace or chart of the electrical phenomena being observed. It is used in scientific, military and medical fields. The Court also pointed out the unique aspect of the invention is the realization that utilization of radiation, principally in the invisible portion of the spectrum, when matched with a paper coated with an emulsion primarily responsive to such radiations, permitted recording of multiple high, as well as low, frequency phenomena, which recording became immediately visible in ordinary room light without the delay of wet process development. We agree with this appraisal.

In arguing for the invalidity of the patent in suit, defendant relies strongly

---

1. Claim 16, typical of the six claims in issue, reads: "In recording apparatus for recording the time-variations of electrical phenomena, a source of invisible radiations which transmits a maximum of energy at predetermined wave length, a recording medium including a substance of maximum response to such wave length, said substance containing means which produce an immediately visible trace upon the incidence of such radiation, a galvanometer having a coil responsive to said time variations, and a mirror movable with said coil to reflect said radiations and cause them to move as a pointer with the movements of said coil and to impinge upon said recording medium to produce a trace."

**38**

on the prior art. It contends the claims of the patent define no more than a combination of old and well-known elements each serving no new function in the combination.

Defendant does not rely upon any single prior art patent as an anticipation of the Heiland patent. No single reference cited by defendant shows or suggests the overall combination of the Heiland invention. All of the prior art references lack one or more of the features required by each of the claims in issue. Most of the prior art primarily relied on by defendant required the undesirable wet chemical processing which the Heiland invention avoided.

Defendant initially cited over sixty prior art patents. At the trial, defendant designated thirteen prior art patents in addition to the twenty references considered by the Patent Office. Such an approach (sometimes designated as "shotgun") has been held to be indicative of invention or of the futility of prior attempts to solve the problem. Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 179 F.2d 401, 404, cert. den. 339 U.S. 958, 70 S.Ct. 981, 94 L.Ed. 1369.

Defendant selected the non-file wrapper reference patent of Oswald, et al. No. 2,030,760, dated February 11, 1936, as its best reference against the Heiland patent. The Oswald patent relates to producing a sound track on ordinary film that requires wet chemical processing. Defendant suggested the Oswald patent could be reconstructed in view of deBoer Patent No. 2,057,016, to eliminate wet processing. However, there still is no suggestion in either of these patents that a matching of the light source and the paper would be necessary or even desirable. We think the trial court properly rejected such a combining of prior art patents.

We hold that none of the prior art relied upon by defendant taken alone or in combination, anticipates the invention of the Heiland patent claims relied on in this suit by the plaintiff.

Defendant selected certain work on a "magnetograph," carried on in 1943 for the United States Government by the Department of Terrestrial Magnetism (DTM) of the Carnegie Institute of Washington, as its best non-patented reference against the Heiland patent. This work is relied on by defendant solely as a statutory bar (35 U.S.C. § 102(a) ) on the ground the invention of the Heiland patent " * * * was known or used by others in this country * * * before the invention thereof * * *."

The trial court held the DTM work was not proof of prior knowledge or use by others on two grounds, 1) the DTM work was classified as "restricted" and was not publicly available, and 2) that all the DTM work was later than the established date of invention to be accorded Heiland. We approve the trial court's findings and conclusions on both grounds.

Defendant admits in its brief that the DTM work does not constitute a direct and full anticipation of all of the claims in issue. However, there can be no doubt that the trial court did consider the identical combination of the DTM work and the Oswald et al. Patent No. 2,030,760 suggested by defendant as the answer to the Heiland invention.

█ The statute uses the words "known or used." This implies that the knowledge and use must be accessible to the public. Block v. Nathan Anklet Support Co., 2 Cir., 9 F.2d 311; Gillman v. Stern, 2 Cir., 114 F.2d 28, cert. den. 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed. 468. In the latter case, Judge Learned Hand for the Court, explained the distinction between secret knowledge or use and public knowledge or use.

█ This Court has often applied the well-established rule of law that a novel combination of elements, whether all new, or all old, or partly new and partly old, which so cooperate as to produce a new and useful result or a substantial increase in efficiency, is patentable. Mojonnier Dawson Co. v. United States Dairies Sales Corp., 7 Cir., 251 F.2d 345, cert. den. 356 U.S. 975, 78 S.Ct. 1139, 2

L.Ed.2d 1148; Blaw-Knox Company v. I. D. Lain Company, 7 Cir., 230 F.2d 873; Lewyt Corporation v. Health-Mor Inc. et al., 7 Cir., 181 F.2d 855, cert. den. 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605.

Heiland provided within the unitary housing of a single instrument the combination of 1) a source of radiations having a maximum of energy at a predetermined wave length in the ultraviolet region, 2) a galvanometer to reflect the radiations in a moving pattern, and 3) a sensitized paper having a maximum response to the predetermined wave length and upon which the moving pattern of radiations "writes" in an immediately visible manner without wet chemical development.

The Heiland patent provided for the first time a unique combination of a beam of "invisible" light directed upon the mirror of a galvanometer responsive to variations of a phenomenon to be recorded, which mirror reflected such beam upon a sheet of paper, sensitized and matched to darken under just that kind of "invisible" light, and so produce a trace which may be observed as it is being made and which is quickly available under normal light conditions without the need of dark room wet process treatment.

Considering next the question of infringement. In 1956, plaintiff came into the market with an oscillograph having an optical direct recording feature which embodied the invention of the Heiland patent. It was displayed at the Instrument Society of America show at New York in September, 1956. Defendant's Chief Engineer there observed the operation of plaintiff's Visicorder. In November, 1956, Eastman Kodak Company advised defendant as to the kind of paper plaintiff was using in its device. In early 1957, the same engineer of defendant inspected one of plaintiff's machines which was in use at Douglas Aircraft Company's plant, and made sketches of same. Thereafter, defendant offered for sale its Direct/Riter No. 602 which was later followed by its Direct/Riter No. 616. It is thus beyond dispute that defendant was fully acquainted with all of the details of the construction and operation of plaintiff's Visicorder before it brought its Direct/Riter on the market.

In claiming non-infringement, defendant stresses the language in the Heiland patent which refers to invisible radiations, and argues that its device does not infringe because its lamp is not limited to one producing invisible rays only, and that its paper is also sensitive to visible rays.

It is true that all of the claims in issue use the words "invisible radiations." Claim 3 states, " * * * a source of invisible radiations, a film which is sensitive only to said invisible radiations." Claims 13, 14, 15, 16 and 17 contain the language " * * * a source of invisible radiations which transmits a maximum of energy at predetermined wave lengths. * * *"

The patentee was his own lexicographer. In Claim 14 is a clarification of the description of the sensitivity of the paper, " * * * a recording medium carrying a photo-sensitive emulsion which is sensitive *substantially only* to the wave lengths of said radiations. * * *" Claim 13 calls it a " * * * photo-sensitive emulsion which is sensitive *substantially only* to the wave lengths of said radiations. * * *" Claims 16 and 17 describe the recording medium as " * * * including a substance of *maximum response* to such wave length. * * *" (Emphasis supplied)

There is no clear line of demarcation known to science between visible and invisible radiations. Approximately .555 micron wave length is taken as the unit of visibility for the average human eye by the Bureau of Standards. At .47 micron wave length, the degree of visibility is less than 10% of the visibility at .555 micron.

To determine what Heiland means by the term "invisible" we must be guided by the disclosure of the patent. The portion of the spectrum involved in this litigation is ultraviolet and part of the blue

all occurring at the same end of the color spectrum as shown by curves 280 and 282 in Figure 18 on Sheet 10 of the Heiland patent drawing. Heiland clearly disclosed and defined the meaning of "invisible" by curve 280 in Figure 18 of the patent drawing.

Defendant's Exhibit 86 was introduced by defendant's expert to demonstrate the degree of visibility of radiations of various wave lengths to the normal eye. The curves shown on the exhibit illustrate that wave lengths of about .55 micron are fully visible to the normal eye. Wave lengths that are shorter are progressively less visible.

The Heiland patent disclosed a source of "invisible radiations" of wave lengths less than .47 micron, and a paper having a response or sensitivity to those invisible radiations as well as some response to wave lengths longer than .47 micron. The emission of radiation from defendant's lamp of wave lengths longer than Heiland's .47 micron limit in combination with the limited response of defendant's paper to those longer wave lengths, accounts for less than 2% of the total "writing" work being performed by the instrument. This has been expressed as a "combination effectivity" of 98% of the radiations below .47 micron. As plaintiff phrases the contention, "defendant seeks to escape infringement under these facts by arguing it infringes only 98% rather than 100%."

We approve of and agree with the following statement in the opinion of the trial court:

"The Court, however, is enlightened by the patentee's pictorial definition in Curve 280 of Figure 18. It clearly discloses some radiation beyond .4 microns, which is designated as the dividing line between ultraviolet and violet, the amount of radiation diminishing markedly in the violet and terminating before the green portion of the spectrum is reached. It is clear, therefore, that the patentee appreciated that the ultra violet source radiations were not exclusively, and without qualifications, in the ultraviolet range. The testimony of the scientists also disclosed that visibility and invisibility of light rays is a comparative matter, depending upon the individual's capabilities or peculiarities.

"Curve 282 of Figure 18 of the Heiland patent shows the responsiveness of the paper, the emulsion of which is made in accordance with the teachings of the patent. It discloses that said responsiveness, similarly to the radiations, is principally in the ultraviolet section of the spectrum."

Defendant complains that plaintiff's argument as to matching of radiation and paper was not considered by the Patent Office. However, Heiland states in his patent that the maximum emission of the invisible light corresponds well to the maximum sensitivity of the sensitized paper emulsion. We think the plaintiff was justified in characterizing this relationship between radiations and the paper as being matched.

Defendant has advanced other arguments and contentions. We have considered same and conclude they are not well taken.

The judgment of the District Court is Affirmed