**PLASTERING DEVELOPMENT CENTER, INC., Plaintiff,**

v.

**PERMA GLAS–MESH CORPORATION, Defendant.**

**Civ. A. No. C 70–610 Y.**

United States District Court,
N. D. Ohio, E. D.

Aug. 3, 1973.

plastering contractor, whose offices are in Chicago and other cities across the country. Defendant is an Ohio Corporation, and is in the business of coating fabrics of a variety of materials and reselling them to contractors, distributors and other customers in a variety of businesses.

Plaintiff owns U.S. Patent No. 3,391,037 relating to a method of covering the joints between wall panels of an interior wall. In 1964 Mr. McNulty got the idea of using a pressure sensitive fiberglass mesh tape as a joint reinforcement in thin coat plastering. He attempted to have this tape produced by several companies but was turned down by all of them. He finally persuaded an employee of Johns-Manville, one Mr. Richard Kucera, to supply him with some tape. In the meantime experimental work had begun (as early as 1962) in the laboratory of McNulty Brothers Company and its subsidiary, Plastering Development Center, companies which had considerable background in research and development in the plastering field.

Thin coat plastering was known as early as 1922. However, the pressure sensitive fiberglass mesh tape was not introduced into the market until after McNulty's invention. United States Gypsum Company (U.S.G.) did not introduce the pressure sensitive fiberglass joint reinforcing tape until March of 1967, which was well after the first commercial use of this tape by McNulty Brothers Company, said event occurring in 1966 and approximately three years after the McNulty patent application was filed. After the McNulty patent issued, U.S.G. signed an agency agreement with Plastering Development Center in which U.S.G. paid royalties to the Plastering Development Center for the sale of rolls of pressure sensitive fiberglass tape.

In the same time period two other major companies were interested in developing a better method of reinforcing joints. Minnesota Mining & Manufacturing Company (3M Co.) began its efforts to find a better system on or be-

H. Stephen Madsen, Cleveland, Ohio, Jerome F. Fallon and John W. Chestnut, Chicago, Ill., for plaintiff.

Joseph Frease and John B. Frease, Frease & Bishop, Canton, Ohio, Alan N. McCartney, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

The facts of the instant case are as follows:

The Plaintiff is an Illinois Corporation and is basically a patent holding company, closely related to McNulty Brothers Company, a large lathing and

fore December of 1960. It was not until May of 1962 that the idea of a pressure sensitive fiberglass mesh tape arose. 3M therein filed a patent application describing said tape. The evidence in the instant case illustrated however that by April of 1963 3M had given up its efforts to perfect and patent pressure sensitive mesh tape.

The other company that was interested in the field of joint reinforcement was National Gypsum. Testimony indicated that said company did not begin experimenting with pressure sensitive fiberglass mesh joint reinforcing tape until after it received a sample of the 3M tape in June of 1962. Defendant, Perma Glas-Mesh Corporation began selling non-adhesive fiberglass mesh tape at least as early as 1960. But it was not until 1969 that Perma Glas began selling its pressure sensitive fiberglass tape designated by them as "Type 209A". This was after the commercial introduction of the U.S.G. pressure sensitive mesh tape. It is plaintiff's allegation that the defendants have induced others to directly infringe upon their patent, and that they are therefore liable to the plaintiffs in this suit.

Defendants have raised several defenses. They first assert the invalidity of Patent No. 3,391,037 under Title 35, U.S.C. Sections 102, 103, 112 and 132. They also assert Plaintiff has been guilty of misuse of the patent in question and finally assert that plaintiff's conduct violates the anti-trust laws of the United States in that they are attempting to control the sale of an unpatentable commodity.

The court first addresses itself to the validity of plaintiff's patent. Title 35, U.S.C. Section 102 provides that:

"A person shall be entitled to a patent unless—

(a) The invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent, or

(b) The invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or . . .

(e) The invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or . . .

(g) Before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it.

In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce the practice, from a time prior to the conception by the other."

Before considering the relevant legal arguments in relation to this section, the court shall first make finding of facts in relation to the 3M Work and the National Gypsum work during the early 1960's.

3M was engaged in a program to develop a one-day drywall joint treatment process. One Mr. Wegwerth was the developer of a compound composition and a fiberglass tape having pressure sensitive adhesion thereon and these developments were subject of applications for patent in both the United States and Canada. However, the United States application was ultimately abandoned in favor of a continuation in part which did not include the descriptive matter concerning the fiberglass tape having a pressure sensitive adhesive. The testimony indicated and this court so finds that the work by the 3M Company was not public, nor was it perfected. Further, the court finds that the 3M work was experimental and eventually was abandoned in the United States. Evidence was received in regards to field testing by 3M of a pressure sensitive mesh tape. However, this court finds that said field

tests were conducted on an experimental level and were basically held to be confidential. Evidence was also received which demonstrated that field tests made by the 3M Company were unsuccessful as cracking generally resulted from the use of their tape. This court finds that the work using the 3M tape fell far short of the standards that 3M would accept as far as using their product on the market. The last field test use of the pressure sensitive tape made by 3M was made in November of 1962.

The court finds that the 3M tape was used with a solvent type joint compound which dried out rather than set, and further the 3M tape did not use the idea of applying plaster with the pressure sensitive tape. Evidence was received and this court so finds that the 3M Company itself classified its work as experimental and that said work was eventually abandoned. Testimony was taken from one Mr. Humke who stated that at the very latest by April of 1963 3M had given up its efforts to produce a pressure sensitive mesh tape.

In regards to the work of the National Gypsum Company, the evidence illustrated that said company first received a sample of 3M tape before it actually prepared, around September of 1962, any memorandum of invention. National Gypsum began to do research work on pressure sensitive tape after said time, said project being classified as "RP–6054". Further, National Gypsum's work was not made public, but testimony was received to the extent that it was strictly confined to the Research Department. The work of National Gypsum and its research project never actually reached the stage of field testing. Evidence was received which indicated that a pressure sensitive mesh tape being worked on by National Gypsum was not satisfactory as a joint reinforcer and that experimentation on said tape would be dropped from further consideration. Therefore, this Court finds that as a matter of fact, the work by National Gypsum was not public nor was it perfected. Further, this Court finds that

such work was experimental and was eventually abandoned by National Gypsum Company.

This court, in applying the law to the above mentioned findings of fact, relies upon the recent decision by the District Court for the Northern District of Ohio, in the case of General Tire and Rubber Company v. Firestone Tire and Rubber Company, 349 F.Supp. 345 (N.D.Ohio 1972). In that case, the defendant Firestone asserted invalidity under Section 102 based upon an alleged prior knowledge or use by Wilmington Chemical Company. The Court therein stated:

"The alleged prior use must be public, perfected, not experimental and not abandoned."

The Court also stated in regards to Section 102 that:

"35 U.S.C. § 102 bars a patent if it was 'known or used by others in this country' before the invention or if it was 'in public use or on sale in this country' more than one year prior to the date of the application for the patent in suit. As in the case of a prior printed publication, a prior use, knowledge, or sale does not anticipate unless it be of the same perfected invention as that of the patent. Each element or feature of the invention must be found in the alleged prior knowledge, use, or sale to invalidate the patent."

Title 35, U.S.C. Section 102 basically refers to what is called anticipatory prior art or anticipations. The Court again refers to the *General Tire* case wherein the Court stated:

"The standards of anticipation are strict. The invention must be disclosed within the four corners of a single reference. If a reference is silent or ambiguous with respect to an element or feature of the invention, that gap cannot be filled by an assumption or by combining one reference with another. An anticipating reference must teach the invention; it is not sufficient to point to silence or ambiguity after the invention and

argue that the invention could be made out from the reference."

The Court also stated that:

"The proof of the asserted prior public use, sale, knowledge, or invention must be established by evidence that is so clear, convincing and cogent as to admit of no reasonable doubt."

■ This court concludes from its findings of fact and the applicable law in the area that the defendant has failed to prove the invalidity of plaintiff's patent under Title 35, U.S.C. Section 102. As stated above, this court finds that neither the work of the 3M Company nor that of National Gypsum was public, nor was it perfected, and further that the work of both companies was experimental and abandoned. Therefore, this court finds plaintiff's patent valid in relation to Title 35 U.S.C. Section 102.

The Court next turns to the validity of Plaintiff's Patent under Title 35 U.S.C. Section 103. Said section provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived (negated) by the manner in which the invention was made."

■ The test of obviousness has been set out in the Supreme Court case of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. Therein, the court stated that in determining obviousness, the trial court should determine: (1) the scope and content of the prior art; (2) the differences between the prior art and the claim; (3) the level of the ordinary skill in the pertinent art; and (4) nonobviousness. The evidence in the instant action illustrates that defendant Perma Glas has relied upon approximately twelve prior art pat-

ents and asserts that said patents illustrate the obviousness of the invention of Plaintiff.

The court first notes that upon an application for a patent, the Patent Office Examiner investigates Patent Office records to determine whether or not a patent application is or is not obvious. The Patent Examiner then selects those prior patents which appear to relate most closely to the invention in question, and thereafter makes his determination on the issue of obviousness.

■ In the instant case the Examiner found that Plaintiff's patent application was not obvious and therefore issued a patent. The prior art was examined by the Examiner and his finding therefore has a strong presumption of validity. The Sixth Circuit Court of Appeals has stated:

". . . where the most pertinent prior art has been considered by the patent office, the presumption (of validity) is greatly strengthened. Great Lakes Equip. Co. v. Fluid Systems, Inc., 217 F.2d 613, 617 (6th Cir. 1954), citing Williams Mfg. Co. v. United Shoe Mach. Corp., 121 F.2d 273, 277 (6th Cir. 1941), aff'd, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942). . . .

. . . . . .

In our opinion, the normal presumption of validity attaches, and may be 'greatly strengthened' by consideration of the state of the prior art, even though the particular letters of patents upon which defendants rely to establish that art, were not considered." Tapco Products Co. v. Van Mark Products Corp., 446 F.2d 420 at 426 (1971).

The specific patents that Defendants Perma Mesh relies upon are Walper Patent No. 1461590; Absmeier Patent No. 1657332; Elmendorf Patent No. 2440936. The Fourth Patent defendants rely upon is Crandell Patent No. 2313990. Defendants also rely upon Driscoll Patent No. 2995784; Dinkel Patent No. 3284980; Gronemeyer Pat-

ent No. 2854352 as well as the Ruffer Patent, the Ulrich patent, the Hochberg patent, and the Schueler patent.

■ When considering the question of obviousness under Section 103, the Court must consider the subject matter of the claims as a whole when comparing the claim with the prior art on the question of obviousness. As was stated in the General Tire & Rubber Co. v. Firestone Tire & Rubber Co., supra,

> "Exercising the human inclination to hindsight Firestone assembled its 144 references and selected from them bits of information which it pieced together to form a mosaic now said to point like an arrow directly to the invention. This approach is not permitted by 35 U.S.C. § 103 or the case law."

None of the patent references cited by defendant illustrates or shows each and every step in the patent of plaintiffs, nor do any of said patents illustrate the use of pressure sensitive adhesive tape and the use of reinforcing joints between wall panels. The fact that the defendant has relied upon twelve prior art patents is significant to the court. As stated by the Seventh Circuit:

> "Defendant initially cited over sixty prior art patents. At the trial, defendant designated thirteen prior art patents in addition to the twenty references considered by the Patent office. Such an approach (sometimes designated as 'shotgun') has been held to be indicative of invention or of the futility of prior attempts to solve the problem. . . ." Minneapolis-Honeywell Reg. Co. v. Midwestern Instr. Co., 298 F.2d 36 (7th Cir. 1961).

The patent in question is a method patent. The Supreme Court has stated:

> "As hereinafter observed, a process patent can only be anticipated by a similar process. It is not sufficient to show a piece of mechanism by which the process might have been performed.
>
> . . . A process patent can only be anticipated by a similar process. A

mechanical patent is anticipated by a prior device of like construction and capable of performing the same function; but it is otherwise with a process patent. The mere possession of an instrument or piece of mechanism contains no suggestion whatever of all the possible processes to which it may be adapted. . . ." Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968 (1902)

See also United States Gypsum Co. v. National Gypsum Co., 440 F.2d 510 (7th Cir. 1971).

Turning next to the requirement of ordinary skill in the art, it is the opinion of this court and it so finds that in the year 1962 when Mr. McNulty applied for the patent for his tape, no one else had conceived or had been able to produce a pressure sensitive perma mesh adhesive tape of the kind in the McNulty patent application. Both 3M and the U.S.G. companies were unable to make a pressure sensitive mesh tape work and no one had used, produced or attempted to produce any tape before 1960.

The testimony of one Mr. Meyer was the only evidence relied upon by defendants as to the obviousness of Plaintiff's patent. Mr. Meyer had nothing to do with the selection of the prior art patents relied upon by defendant Perma Glas and such is evidence of his lack of experience in the area. The Seventh Circuit has said on this point:

> "Moreover, not a single person skilled in the art testified that the Podlesak method was obvious at the time it was invented in 1954. The defendants' sole testimony in this regard was provided by a patent lawyer who admittedly was not an expert in the cheese packaging field." National Dairy Products Corp. v. Borden Co., 394 F. 2d 887 (7th Cir. 1968).

Such a situation exists in this case, as Mr. Meyer also is no expert in the plastering field.

■ As to the issue of the non-obviousness of the McNulty method patent,

the court first notes that the use of hindsight in the instant case would naturally be improper.

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be presented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always at hand and easy to be seen by a merely skillful attention." Diamond Rubber Co. v. Consolidated Rubber Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1910).

The court finds from the evidence that such companies as United States Gypsum and National Gypsum Company, both of which had substantial research departments had attempted but had failed to conceive of the method that is claimed in the McNulty patent. Not only that, but United States Gypsum entered into a licensing agreement with plaintiff and began selling pressure sensitive adhesive fiberglass mesh tape for use in thin coat plastering.

The Fourth Circuit has stated about circumstances similar to those mentioned above that:

"What has been said above of the work of many skilled chemical engineers in the field, the impact of this patent upon the industry and the defendants' prompt adoption of the patented apparatus demonstates its merits and utility and forecloses the suggestion that the combination was obvious to others working in the field." Otto v. Koppers Co., 246 F.2d 789 (4th Cir. 1957).

To the entire area of obviousness, Judge Learned Hand has stated:

"The test laid down is indeed misty enough. It directs us to surmise what was a range of ingenuity of a person 'having ordinary skill' in an 'art' with which we are totally unfamiliar; and we do not see how such a standard can be applied at all except by recourse to the earlier work in the art, and to the general history of the means available at the time. To judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our ignorance for the acquaintance with the subject of those who are familiar with it. There are indeed some sign posts: e. g. how long did the need exist; how many tried to find the way; how long did the surrounding and accessory arts disclose the means; how immediately was the invention recognized as an answer by those who used the new variant? In the case at bar the answers to these questions all favor the conclusion that it demanded more intuition than was possessed by the 'ordinary' workers in the field. The needs were known but the purpose to fulfill them with that minimum of material and labor disclosed in the patent had not appeared; and economy of production is as valid a basis for invention as foresight and the disclosure of new means. In the case at bar the saving of material as compared to anything that had preceded, was very great indeed; the existing devices at once yielded to Reiner's disclosure; his was an answer to the 'long-felt want.' " Reiner v. I. Leon Co., 285 F.2d 501 (2nd Cir. 1960).

■ From the evidence produced at trial, this court finds under the guidelines of the Honorable Learned Hand, that the McNulty Patent was not obvious to a person skilled in the art at the time of the invention.

Upon consideration and review of the prior art patents considered by the patent office and upon consideration of the above mentioned authorities, this court finds that the invention of plaintiff was not obvious at the time Mr. McNulty applied for the patent and the Court therefore affirms the findings of the Patent Examiner as to the issue of obviousness and therefore finds defendant's assertion that plaintiff's patent is invalid under Section 103 to be without merit.

The court next turns to defendant's assertion of invalidity under Title 35 U.S.C. Section 112. Section 112 states:

"The specifications shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specifications shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

■■ Defendant asserts that Section 112 requires a description of an invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." This section is directed to a person of ordinary skill in the art to which the patent pertains. See Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968 (1902). Plaintiff submitted the testimony of two witnesses as well as a movie describing the application of their patent and it is the opinion of this Court and it so finds that persons skilled in the art of drywall plastering would have little or no difficulty in understanding the method contained in plaintiff's patent.

"There is nothing vague or confusing about this claim to a person skilled in the carburetor art. It must be interpreted in the light of the specification and drawings. The test is whether the disclosures make the invention clear to a mechanic skilled in the art so that he could construct a carburetor and use it." Tillotson Mfg. Co. v. Textron, Inc., Homelite, 337 F.2d 833 (6th Cir. 1964).

The court finds an analogous situation in the facts of the instant case.

In further support of its finding, this court cites the case of Abington Textile Machinery Works v. Carding Specialists (Canada) Ltd., 249 F.Supp. 823 (D.C.D.C.1965), wherein the court said:

"As a general observation, the Court takes the position that, since an Examiner will usually make a breadth and indefiniteness rejection under 35 U.S.C. § 112 if he can fairly and reasonably do so, therefore the issuance of a patent gives rise to a nearly conclusive (although still rebuttable) presumption that the patent specification and claims meet the full statutory requirements of 35, U.S.C. § 112."

Defendant has failed to prove to this Court through evidence or testimony that the patent in issue failed to meet the requirements of Section 112. Therefore, this court finds the McNulty patent to be valid under Section 112 of Title 35.

The court next turns to defendant's claim of invalidity under Title 35 U.S.C. Section 132. Section 132 provides:

"Whenever, on examination, any claim for a patent is rejected, or any objection or a requirement made, the Commissioner shall notify the applicant thereof, stating the reasons for such rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application; and if after receiving such notice, the applicant persists in his claim for a patent, with or without amendment, the application shall be reexamined. No amendment shall introduce new matter into the disclosure of the invention."

Defendant takes issue with the very last sentence of. said section, asserting that plaintiff, by applying adhesive over the entire one side of the tape, added new matter, in that Claim 10 of plaintiff's patent which is dependent upon Claim 9 contains the language:

"Said adhesive along the edges of said web is about ¼ to ½ inch in width."

Since adhesive has been applied to the entire side of the tape, defendant asserts that this is a violation of Section 132. In support of this, it cites the case of Butterfield v. Oculus Contact Lens Co., 332 F.Supp. 750 (D.C.N.D.Ill.1971). Said case related to the addition of the terms "conforming and corresponding" in relation to a contact lens to be placed upon a person's eye. The court stated:

"In addition to adding the concept of a lens 'conforming' or 'corresponding in curvature' to the cornea curvature, the amendment also added with respect to the central corneal area 'so that undue pressure will not be present at any point' and with respect to the peripheral area 'whereby space is provided for the natural uninterrupted circulation of lacromal fluids between said lens and the cornea.' While these phrases simply describe the purpose of the construction and not the patented device, they represent a new and different objective than that stated in the original application."

The Court therefore concluded:

"It seems clear, therefore, that the amendment did introduce new matter into the disclosure of the invention in violation of 35 U.S.C. § 132 and the patent is invalid for that reason as well. Hazeltine Research, Inc. v. Zenith Radio Corp., 388 F.2d 25 (C.A.7, 1967)."

The court finds this case to be distinguishable in that the above cited case, the only one cited by defendant for their proposition, relates to terms that had not originally been described in the patent and thereafter were added. In the instant case, the original Claim 9 at Column 4, lines 49 through 53 stated:

"While I Prefer to apply the pressure sensitive adhesive only to the side edges on one side of the web, the adhesive may be applied to the entire one side of the web if it is strong enough to provide by itself reinforcement to the joint."

The law in the area is clear. Seventh Circuit Court of Appeals has held:

"The fact that the Patent Office granted the patent in suit necessarily means that it did not consider the amendment to the application as 'new matter' within the meaning of its rules or of the Act. Since the Patent Office is constantly determining and defining what is or what is not new matter, its ruling on such questions is entitled to special weight." Helms Products v. Lake Shore Manufacturing Co., 227 F.2d 677 (7th Cir. 1955).

■ Therefore, this court finds that defendant's claim of invalidity under Section 132 is without merit.

Finally, the Court turns to the issue of misuse.

■ Defendant's main argument centers around plaintiff's agency agreement with the United States Gypsum Company which provides for the collection of the royalty of ten cents on the sale of each roll of pressure sensitive tape. Defendant asserts that the language on the label fails to meet the test required for collecting a royalty on an unpatented product. The court cannot agree. The label in question reads as follows:

"The price of this product includes a royalty of ten cents per 300 foot roll, payable by contractors or other persons for use of this product in the process covered by United States Patent No. 3,391,037. Persons who do not wish to use this product in the aforesaid process may purchase the same without the payment of said royalty."

This court finds that there was no evidence introduced by the defense which illustrates that either the United States Gypsum Co. or the plaintiff collected royalties for non-infringing uses of U.S.G.'s pressure tape. See United States Gypsum Co. v. National Gypsum Co., 387 F.2d 799 (7th Cir. 1967), and Noll v. O. M. Scott & Sons, Co., 467 F.2d 295 (6th Cir. 1972). Therefore, this court finds that there was no misuse of the patent in question.

The Court now turns to the question of infringement raised by plaintiff in his complaint. The plaintiff originally asserted that defendant infringed its patent under the provisions of Title 35, U.S.C. Section 271(a)(b) and (c). With regard to Title 35, U.S.C. Section 271(a), Plastering Development Center, in its Reply Brief filed on March 2, 1973 states:

"With regard to direct infringement under Section 271(a) Plaintiff has not pressed the work performed at the farm house described by Mr. Carpenter in his deposition, since this work is de minimus."

Thus plaintiff did not pursue the issue of direct infringement. The court also notes that plaintiff failed to produce any evidence that there has ever been any direct infringement of its patent. The court therefore finds that there has been no direct infringement of Plaintiff's Patent No. 3,391,037.

In regards to contributory infringement under Title 35, U.S.C. Section 271(c) plaintiff states in the above mentioned brief:

"Plaintiff was not aware of these (non-infringing) uses prior to the trial and in view of the testimony of Messrs. Hartley and Hawkes, plaintiff is not asserting contributory infringement under Section 271(c)."

The court therefore finds that there has been no contributory infringement of plaintiff's Patent No. 3,391,037.

Thus, the only infringement charged by plaintiff against defendant is under Title 35, U.S.C. Section 271(b), which section states:

"whoever actively induces infringement of a patent shall be liable as an infringer."

The fundamental basis of patent law requires that a patent holder establish acts of direct infringement before liability for inducement or contributory infringement can be found. See Aro Mfg. Co., Inc., v. Convertible Top Replacement Co., Inc., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) and Aro Mfg. Co., Inc. v. Convertible Top Replacement Co., Inc., 377 U.S. 476, 84 S. Ct. 1526, 12 L.Ed.2d 457 (1964). As to evidence related to acts of direct infringement, plaintiff brought forward two witnesses, Mr. Wellsley F. Mach and Mr. John Niederkorn, and submitted Exhibits 12 through 19. This court finds that the evidence received through the testimony of the two above mentioned persons failed to establish a direct infringement of plaintiff's patent. This court is bearing in mind that plaintiff's patent, being a method patent, must be infringed, if at all, in the exact method prescribed by the patent. The patent claim in question states:

In a method of interior wall construction the steps of providing a roll of open mesh web constructed of glass fiber material and having a pressure sensitive adhesive on one side thereof, mesh openings being of the order of about 10 to 20 per lineal inch, securing the end of said web roll over an elongated joint defined by adjacent wall panels, unrolling said roll over said joint while applying pressure to the unrolled web to conform the same to said adjacent wall panels on each side of said joint and applying a thin coat of plaster over said web and said adjacent wall panels."

Mr. Mach testified that he attached one end of the roll to the top of wall board joint, then dropped the tape to the floor, cut it the proper length and smoothed the tape over the joints. Further, plaintiffs failed to prove to this

court that the actions of defendant in any way induced Mr. Mach to do what he did. Therefore, this Court finds that the testimony of Mr. Mach failed to prove either direct infringement or inducement by the defendant to infringe.

Similarly, Mr. Niederkorn's testimony failed to establish direct infringement. Mr. Niederkorn's deposition testimony was:

"Q. All right. When you applied the tape did you unroll the roll over the joints of the wallboards?

A. Joints and stuck it on with your hand and just kept rolling along."

This court finds that said testimony is inconclusive and does not illustrate that Mr. Niederkorn performed each step of the patent in issue.

Further, this court finds after careful review of Exhibits 12 through 19 that said exhibits do not teach the method claimed by the patent of plaintiffs.

Exhibit 12 is a Distributor's Price List. It contains samples of defendant's glass mat, glass fabric, cotton fabric, and other specialty items. No reference is made to plastering or to any of the methods of use of plaintiff's patent.

Exhibit 13 is a General Contractor's Price List and again contains samples of defendant's different mesh products and fails to make any reference to plastering or to any of the methods of use of plaintiff's patent.

■ Exhibit 14 is a Builders' Supplies Price List. On the cover is a picture of a plasterer putting thin coat plaster over dry wall and over "Glas-Mesh Fabric Tape", which covers the area where two dry wall boards meet. Upon consideration and review of the testimony of Mr. Meyer in regards to this picture plus its own observations, this court finds that the tape in the picture cannot be found to be the infringing Type 209A tape, as a matter of fact, and further finds that even if it were, the mere fact that a picture of this tape already applied to wallboard does not in and of itself become inducement to infringe. Again this court notes that the patent in suit is a method patent, and in order to hold defendants liable for inducement to infringe said patent, plaintiffs have the burden of showing to this Court that the defendant has encouraged others through its literature, to take each and every step of the method. The picture on Exhibit 14 does not do this. At most, it suggests that the tape in question could be used in the plastering field. This is not an infringment of plaintiffs patent.

Exhibit 15 also portrays a picture of a man apparently stapling a mesh tape to a wall with the caption underneath stating:

"The big sheets are nailed to the wood studs in the conventional manner and then the joints are covered with GLAS-MESH Fabric Tape, a tough, resilient, fabric tape."

The court notes that nothing is mentioned about self-adhesive mesh tape. Further, the picture in and of itself does not teach the steps in the patent in issue.

Exhibit 16 is a Plastering Contractors Price List and shows the same picture as Exhibit 14. Again, this Court is of the opinion that the mere sale of the tape in question is not inducement to infringe the patent in issue, and the picture in-and-of-itself does not induce a purchaser to infringe the method patent of plaintiff.

Exhibit 17 is a news letter distributed by defendant to plastering contractors. It carries no pictures, but states in part:

"Suffice it to say, this is a quality GLAS-MESH material that has an adhesive backing which makes it easy to apply and in many instances is a time-saver because it requires no stapling or other reinforcing to make it stay put."

■ This language does not teach the steps of the patent in suit and therefore does not induce infringement.

Finally, Exhibit 18 is another news letter distributed by defendants. The pertinent language in said letter reads:

". . . self adhering glass tape. We are attaching a sample of this new product, which will be known as our Type 209A, 'PERMA-TITE', Self-adhering White Weave Set Glass Tape, and which should be of especial interest to all Plastering and Dry Wall Contractors. We believe the 'PERMA-TITE' sample attached speaks for itself, but if you desire additional information regarding same, kindly contact us and we will do our best to further enlighten you concerning this item."

No evidence was received as to "further enlightenment", if any, that was ever received or requested by any one. Again, the above quoted language does not teach the steps of the patent in issue and, therefore, does not infringe or induce infringement of said patent.

Plaintiff seems to be arguing that on the one hand its patent is not obvious (and this Court so found) but on the other hand the mere sale of a similar tape would induce infringement as the method of use would be "obvious" to any plasterer. This court specifically rejects this argument and finds, in the alternative that if the literature and/or testimony in this case were to be found to induce infringement, in violation of Title 35, U.S.C. Section 271(c) plaintiff still would not be entitled to recover for under the logical implication of plaintiff's argument, the patent would be invalid for obviousness under Title 35, U.S.C. Section 103.

In order for this court to find inducement or contributory infringement, it would first have to accept the basic theory that the only way in which pressure sensitive fiberglass mesh tape could possibly be used by plastering contractors would be one which constitutes an infringement of the method claim of the patent in suit and a corollary to that which would be that the mere offering of such tape as defendant's Type 209A

induces plastering contractors to infringe plaintiff's patent. The court cannot agree.

 This court therefore finds that plaintiff has failed to establish direct infringement of its patent and has further failed to meet its burden of proof on the issue of inducement. Therefore, this court concludes that plaintiff's patent is valid, and that the same has not been infringed. Judgment for defendant, costs assessed against plaintiff.

It is so ordered.